**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM BIERMANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 20 C 2986** |
| | ) | |
| **COMCAST CABLE** | ) | |
| **COMMUNICATIONS** | ) | |
| **MANAGEMENT, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

William Biermann is a former employee of Comcast Cable Communications

Management, LLC. He claims Comcast unlawfully terminated his employment because

of his age. Comcast has filed a motion to compel Biermann to arbitrate his age

discrimination claim and to stay or dismiss the present lawsuit. At issue is whether the

parties entered into a valid and enforceable arbitration agreement.

**Background**

Biermann worked for Comcast from approximately 1988 to 2019. In April 2019,

Comcast involuntarily terminated Biermann's employment. Biermann contends that

Comcast terminated his employment because of his age, in violation of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. § 623.

In May 2020, Biermann sued his former employer, Comcast, for employment

discrimination in violation of the ADEA. Comcast contends that Biermann is obligated to

arbitrate his claims pursuant to the claimed arbitration agreement.

On December 2, 2013, Comcast mailed its employees a letter and a 12-page brochure to inform them about its new alternative dispute resolution program, Comcast Solutions, which included a mandatory arbitration agreement. The letter and the brochure announced to employees that Comcast was introducing a new program to address workplace legal issues. It offered employees who did not want to participate in the program an option to opt out. The December 2 letter stated as follows:

> If you decide you would like to participate in the program, you don't have to do anything. You will be automatically enrolled.
>
> If you prefer not to participate in the program, all you need to do is complete an "Opt Out" form, available on the Comcast Solutions page on TeamComcast, and return it no later than January 7, 2014 . . . .

Def.'s Motion, Ex. A (emphasis omitted). In support of its present motion, Comcast has provided an affidavit from Vice President of Labor & Employee Relations Lynn Collins stating that on December 2, 2013, Comcast mailed the letter and the Comcast Solutions brochure to all Illinois employees, including Biermann. Collins states that the company's records reflect that it sent the brochure to Biermann's correct mailing address. *Id.*, Ex. E ¶¶ 5-6. A copy of the envelope addressed to Biermann is attached to Comcast's motion as Exhibit D. Biermann did not send in the opt-out form.

In addition, Collins says that on December 31, 2013, Comcast sent its employees additional electronic correspondence regarding the Comcast Solutions program. A copy of the December 31 e-mail is attached to Comcast's motion as Exhibit C. According to Collins' affidavit, the e-mail was sent to Illinois employees, including Biermann, to the e-mail addresses Comcast assigned to them during their employment. Def.'s Motion, Ex. E ¶ 10. The e-mail reminded the employees about the new program, Comcast

2

Solutions, and contained a hyperlink to the program brochure. Def.'s Motion, Ex. C. The e-mail also reminded employees that if they did not wish to participate in the program, they needed to complete an opt out form by the deadline. *Id.* Biermann did not return the opt-out form by the deadline. Def.'s Motion, Ex. E ¶ 12.

Biermann contends that his failure to return the opt-out form does not constitute acceptance because he was not aware of the Comcast Solutions materials and does not remember receiving them. He has provided his own affidavit in which he avers that he "do[es] not know whether the Comcast Solutions brochure was mailed to [his] home prior to January 7, 2014." Pl.'s Response, Ex. 1 ¶ 7. He also states that he has no recollection of receiving or opening the December 31 e-mail. *Id.* ¶ 8.

As indicated, Biermann did not opt out of the Comcast Solutions program or, in particular, the arbitration requirement. Comcast asserts that as a result, he accepted the terms of the alternative dispute resolution program, including the agreement to arbitrate disputes.

## Discussion

The Federal Arbitration Act (FAA) requires enforcement of valid arbitration agreements. 9 U.S.C. § 4. A motion to compel arbitration should be granted if the party seeking arbitration shows that (1) the parties agreed to arbitrate and (2) the dispute falls within the arbitration agreement. *Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

Before compelling arbitration, a court must determine whether a valid arbitration agreement exists. *Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2). An agreement to arbitrate is a contract; accordingly,

whether the parties entered into a valid agreement is a matter of state contract law. *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003).

Comcast contends that an agreement to arbitrate was created via Biermann's tacit acceptance of the Comcast Solutions program, including the arbitration requirement. Biermann does not contend that his claim in this case falls outside the scope of the arbitration clause; rather, he argues that no valid binding arbitration agreement was created. His primary argument is that he never accepted Comcast's offer by failing to opt out because he was not aware of the arbitration materials that Comcast mailed on December 2, 2013 or the materials e-mailed on December 31, 2013. In support, Biermann has offered an affidavit in which he states:

> I do not know whether the Comcast Solutions brochure was mailed to my home prior to January 7, 2014. However, I am certain that I never saw the Comcast Solutions brochure until after the termination of my employment in April, 2019.
>
> I have reviewed the e-mail dated December 31, 2013, sent to "Comcast Solutions" and attached as Exhibit C to Comcast's Motion to Compel Arbitration. I have searched my memory and my record and I have no recollection of receiving or opening this email while I was employed by Comcast.

Pl.'s Response, Ex. 1 ¶¶ 7-8.

In support of its contention that an agreement was formed, Comcast relies upon the well-settled rule that mail properly addressed creates a presumption of delivery to the addressee, in this case Biermann. *Hagner v. United States*, 285 U.S. 427, 430 (1932); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002); *Pohlman v. NCR Corp.*, No. 12 C 6731, 2013 WL 3776965, at *3 (N.D. Ill. July 17, 2013). On this point, Comcast offers a copy of the postage-paid envelope that it sent to Biermann on December 2, 2013, enclosing Comcast Solutions letter and brochure. Def's Motion, Ex.

4

D. The copy of the envelope includes Biermann's correct mailing address. As indicated earlier, Comcast also offers a sworn declaration of its Vice President of Labor & Employees Relations, who states that the copy submitted to the Court is a "true and accurate copy of the envelope" sent to Biermann in December 2, 2013, with the Comcast Solutions brochure, and that it was Comcast's regular practice to generate and preserve a copy of the envelope. Def's Motion, Ex. E ¶ 8. This is sufficient to invoke the presumption of delivery. The presumption of delivery that applies to Comcast's December 2 mailing also applies to its December 31 e-mail. *See Ball v. Kotter*, 723 F.3d 813, 830 (7th Cir. 2013) (applying the presumption of delivery to properly sent e-mails).

Biermann has not sufficiently rebutted the presumption of delivery. He does not contend that his street address listed on the regular mail envelope or his e-mail address are incorrect. Nor does he deny receiving the mailing or e-mailing from Comcast. Rather, he states only that he does not recall receiving these items or opening them.

These statements by Biermann are insufficient to rebut the presumption of delivery. As the Seventh Circuit explained in *Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002), an employee cannot rebut the presumption of delivery simply by stating that he does not recall receiving the documents, when the employer has offered evidence that it properly sent them. *Id.* at 735-36; *see also Pohlman*, 2013 WL 3776965, at *4-5. In *Tinder*, the plaintiff submitted an affidavit in which she stated that she did not recall receiving or seeing the arbitration materials but did not deny receiving the correspondence. *Tinder,* 305 F.3d at 736. The Seventh Circuit held that the plaintiff's lack of recollection of receipt of the arbitration materials, without any

5

supporting evidence, was insufficient to create a genuine factual dispute regarding whether there was, in fact, an agreement to arbitrate. *Id.* The same is true with regard to the December 31 e-mail.

For these reasons, the Court concludes that Comcast's mailing and e-mailing of the Comcast Solutions letter and brochure was a valid offer, and Biermann's silence following delivery of the letter and brochure (or, in the e-mail, the links to the brochure) constitutes acceptance. *See, e.g., First Nat. Bank of Chi. v. Atl. Tele-Network Co.,* 946 F.2d 516, 519 (7th Cir. 1991); *Boomer v. AT&T Corp.*, 309 F.3d 404, 415 (7th Cir. 2002); *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 714 (7th Cir. 2019). In *Gupta*, applying the Illinois law to facts very similar to those in this case, the Seventh Circuit held that silence and inaction in response to an e-mailed arbitration agreement constituted acceptance of the agreement to arbitrate. *Gupta*, 934 F.3d at 713-14. The court concluded that the plaintiff's silence after he was given a reasonable opportunity to opt out, along with his continued employment, amounted to acceptance of the agreement to arbitrate. *Id.* The same is true in this case. Biermann's silence and inaction, combined with his continued employment, constituted acceptance of Comcast's arbitration agreement.

With regard to the December 31 e-mail, Biermann also argues that because the e-mail did not refer to the arbitration terms but instead contained only a hyperlink, it did not constitute a valid offer. Even if this were so, it would not make a difference; as the Court has indicated, an agreement was formed by Biermann's tacit acceptance of the offer contained in the December mailing. But that aside, Biermann's argument regarding hyperlinks lacks merit. In analyzing online contracts, the Seventh Circuit has

concluded that Illinois' general contract principles also govern the contracts formed online. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). The court in *Sgouros* reasoned that online agreements, just like any other agreements, should place a reasonable person on notice of all the terms and conditions of an agreement. *Sgouros,* 817 F.3d at 1035. And the court recognized that where the terms are contained in a hyperlink, courts generally look at whether the online communications direct the recipients to read them. *Id.* Here, though the body of the e-mail did not contain the arbitration terms but instead only a hyperlink to brochure containing those terms, the e-mail clearly directed the recipients to read the terms and reminded them about their right to opt out of the Comcast Solutions Program by the deadline. The December 31 e-mail stated:

> Information regarding a new program called Comcast Solutions was recently mailed to your home address. To ensure you received this important program information, we are sending this reminder email along with a link to the program brochure that you should have received in hard copy at your home. . . .

Def.'s Motion, Ex. C. These statements, combined with the hyperlink, were sufficient to place a reasonable person on notice that the hyperlink contained important terms and conditions.

Finally, Biermann contends that the Comcast Solutions program, including the arbitration requirement, is procedurally unconscionable because he was not made aware of the program and his ability to opt out. Under Illinois law, procedural unconscionability refers to circumstances when a contract term is "so difficult to find, read, or understand that the plaintiff cannot fairly be said to be have aware he was agreeing to it." *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 101, 854 N.E.2d 607, 623

(2006). In deciding whether an arbitration provision is procedurally unconscionable,

Illinois courts consider all the circumstances surrounding the agreement, including

whether each side had a reasonable opportunity to review and understand its terms.

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 228, 882 N.E.2d

157, 171 (2008) (citing *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 857 N.E.2d 250

(2006)). Here there is no question that Biermann was presented at least twice with the

opportunity to review the Comcast Solutions information. He cannot sustain a

contention that he could not find, read, or understand the Comcast Solutions program

and his ability to opt out. His contention that the Comcast Solutions program is

procedurally unconscionable lacks merit.

## Conclusion

For these foregoing reasons, the Court grants Comcast's motion to compel

arbitration and stays further proceedings pending arbitration of Biermann's claims. The

Clerk is directed to administratively terminate the case. The parties are directed to file a

joint status report on April 30, 2021.

Date: November 23, 2020

_____

MATTHEW F. KENNELLY
United States District Judge